**Eric S. Fish**
California Bar No. 280992
**Federal Defenders of San Diego, Inc.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Eric_Fish@fd.org

Attorneys for Morena Mendoza-Romaldo

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE RUBEN B. BROOKS)

| | | |
|---|---|---|
| **United States of America,** | ) | Case No: 18mj-2070-RBB |
| | ) | |
| Plaintiff, | ) | **Memorandum of Points and** |
| vs. | ) | **Authorities in Support of Ms.** |
| | ) | **Mendoza-Romaldo's Motion to** |
| **Morena Mendoza-Romaldo,** | ) | **Dismiss the Complaint** |
| | ) | |
| Defendant. | ) | |

## I.

### INTRODUCTION

The government has selected Ms. Mendoza-Romaldo for prosecution for misdemeanor illegal entry based on its belief that she is a citizen of El Salvador. It did so while simultaneously declining to prosecute three people in the same situation whom it believes to be citizens of India. This kind of invidious discrimination based on alleged country of origin is forbidden by the equal protection guarantees of the Fifth Amendment's due process clause.

A selective prosecution claim requires Ms. Mendoza-Romaldo to make two showings: first that the government's actions had a <u>discriminatory effect</u> because it could have prosecuted other similarly-situated people but declined to do so; second, that the government's actions were motivated by a <u>discriminatory purpose</u>. As demonstrated in this motion, she can make both showings. First, the government itself admits that it arrested Ms. Mendoza-Romaldo on the same day as it arrested many other people in the same situation, many of whom claimed to be citizens of Central American countries and three of whom claimed to be citizens of India. Other than alleged national origin, all of these people were in the precise same situation. Despite an ostensible "zero-tolerance" policy toward illegal entries, the government declined to prosecute the alleged Indian citizens while simultaneously filing charges against the alleged Central Americans. Second, the words and actions of the President of the United States, the Attorney General, and the United States Attorney for the Southern District of California have made plain that the reason Ms. Mendoza-Romaldo and other arrestees were prosecuted was precisely due to their alleged Central American origin.

The government cannot choose its defendants based on their alleged country of citizenship, but that's exactly what it did here. The Court should not stand for such invidious discrimination, and should dismiss the complaint.

## II.

## STATEMENT OF FACTS

**A.    The caravan leaves Tapachula in southern Mexico.**

"Caravans" of migrants from Central America to the United States have traveled through Mexico since at least 2008.[1] Such caravans usually consist of people from Central American countries such as Honduras, Guatemala, and El Salvador, who travel together through Mexico for safety and to draw attention to their humanitarian plight. *Id.* The groups seek asylum in the United States. *Id.*

In 2018, such a caravan of asylum-seekers left the southern Mexico city of Tapachula on March 25. *Id.* It consisted of about 1,000 people traveling together. *Id.* According to news reports, "the largest single group of migrants in the caravan is from Honduras, although there are also many Guatemalans and Salvadorans." *Id.*

**B.    The President and the Attorney General comment on the caravan.**

Although previous such caravans had been largely ignored by the news media and the American authorities, *id.*, this year the caravan drew a great deal of attention from both. The President of the United States began tweeting about the caravan soon after it departed, warning of dire consequences should the asylum-seekers reach the United States.

On April 1, 2018, the President tweeted: "Border Patrol Agents are not allowed to properly do their job at the Border because of ridiculous liberal (Democrat) laws

---

[1] "A closer look at the migrant 'caravan' at the border – what is it, and what comes next?", CBS News, May 1, 2018, *available at* https://www.cbsnews.com/news/migrant-caravan-what-is-it-and-whats-next-closer-look/

UNITED STATES V. MENDOZA-ROMALDO, 18MJ-2070-RBB – MS. MENDOZA-ROMALDO'S MOTION TO DISMISS THE COMPLAINT - 3

like Catch & Release. Getting more dangerous. 'Caravans' coming."[2] On the same day, he tweeted: "These big flows of people are all trying to take advantage of DACA. They want in on the act!"[3] On April 2, he tweeted about the need to prevent the caravans from entering the United States: "Mexico has the absolute power not to let these large 'Caravans' of people enter their country. They must stop them at their Northern Border, which they can do because their border laws work, not allow them to pass through into our country, which has no effective border laws.....".[4]

On April 2, 2018, the President specifically referenced the asylum process, tweeting: "As ridiculous as it sounds, the laws of our country do not easily allow us to send those crossing our Southern Border back where they came from. A whole big wasted procedure must take place."[5] And on the same day, the President specifically named two of the countries whose migrants he desired to keep out of the United States: "Honduras, Mexico and many other countries that the U.S. is very generous to, sends many of their people to our country through our WEAK IMMIGRATION POLICIES. Caravans are heading here. Must pass tough laws and build the WALL."[6] The next day, the President again made clear that he was targeting the caravan and people from specific countries: "The *big Caravan of People from Honduras*, now coming across Mexico and heading to our "Weak Laws" Border, had better be

---

[2] https://twitter.com/realDonaldTrump/status/980443810529533952

[3] https://twitter.com/realDonaldTrump/status/980451798606602241

[4] https://twitter.com/realDonaldTrump/status/980762392303980544

[5] https://twitter.com/realDonaldTrump/status/980958298445885446

[6] https://twitter.com/realDonaldTrump/status/980961086546632705

UNITED STATES V. MENDOZA-ROMALDO, 18MJ-2070-RBB – MS. MENDOZA-ROMALDO'S MOTION TO DISMISS THE COMPLAINT - 4

stopped before it gets there."[7] (emphasis added). And in a speech on April 5, 2018, the President claimed that members of the caravan were committing widespread rapes.[8]

On April 23, 2018, the President informed the public by tweet that he had expressly given orders regarding the caravan: ". . . I have instructed the Secretary of Homeland Security not to let these large Caravans of people into our Country."[9] And on April 30, 2018, the President described the caravan as "openly defying our borders."[10]

The President was not the only Executive Branch official to publicly comment on the supposed danger posed by the migrant caravan from Central America. On April 4, 2018, the Attorney General issued a statement describing " a so-called 'migrant caravan' [that] was making its way through Mexico with the intent of illegally crossing the southern border of the United States." *See* Statement by Attorney General Sessions on National Guard Deployment, April 4, 2018 (Exhibit A). The Attorney General continued, "The President was clear that this caravan needed to be stopped before it arrived at our southern border[.]" *Id.*

---

[7] https://twitter.com/realDonaldTrump/status/981121409807155200

[8] " 'Yesterday, it came out where this journey coming up, women are raped at levels that nobody has ever seen before,' the president said at a White House tax reform event in White Sulphur Springs, West Virginia. 'They don't want to mention that, so we have to change our laws.'" NBC News, "Trump claims women 'are raped at levels never seen before during immigrant caravan," April 5, 2018, *available at* https://www.nbcnews.com/politics/white-house/trump-claims-women-immigrant-caravan-being-raped-levels-never-seen-n863061

[9] https://twitter.com/realDonaldTrump/status/988413372298416128

[10] https://twitter.com/realDonaldTrump/status/991084424992296962

UNITED STATES V. MENDOZA-ROMALDO, 18MJ-2070-RBB – MS. MENDOZA-ROMALDO'S MOTION TO DISMISS THE COMPLAINT - 5

Just a few days later, on April 6, 2018, the Attorney General announced a new "zero-tolerance policy" for illegal entry violations along the southwestern border. *See* Department of Justice, Office of Public Affairs, "Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry," April 6, 2018 (Exhibit B). That policy directed the United States Attorney for the Southern District of California, among others, to "prosecute *all* Department of Homeland Security referrals of section 1325(a) violations, to the extent practicable." *Id.*

The Attorney General again announced his intention to target Central American migrants who it claims are part of the caravan on April 23, 2018, specifically naming the countries he wanted to target with prosecution:

> Pockets of the original, so-called 'migrant caravan,' which press reports indicate ***consists mostly of Honduran nationals***, have begun to arrive at our southern border with the intent of claiming asylum. These individuals—and their smugglers—ignored the willingness of the Mexican government to allow them to stay in Mexico.
>
> Let today's message be clear: our nation has the most generous immigration system in the world, but this is a deliberate attempt to undermine our laws and overwhelm our system. There is no right to demand entry without justification. Smugglers and traffickers and those who lie or commit fraud will be prosecuted to the fullest extent of the law.
>
> . . .
>
> Accordingly, I have directed our U.S. Attorneys at the border to take whatever immediate action to ensure that we have sufficient prosecutors available. I have also directed that we commit any additional necessary immigration judges to adjudicate any cases that may arise from this 'caravan.'

*See* Attorney General Jeff Sessions Statement on Central American 'Caravan,'" April 23, 2018 (Exhibit C).

C.  **Border Patrol arrests near the border on April 27, 2018.**[11]

According to the government, Ms. Mendoza was arrested on April 27, 2018, near "Goat Canyon" in the Southern District of California. *See* Complaint, Dkt. No. 1 (Exhibit D). The government claims that Border Patrol agents encountered a group of seven people, six of whom claimed to be citizens of El Salvador and one of whom claimed to be a citizen of Honduras. *Id.* The government alleges that Ms. Mendoza claimed to be a citizen of El Salvador. *Id.* The government also alleges that she has "no prior immigration and criminal histories." *See* I-213 Report (Exhbit E).

On the same day, April 27, 2018, the government arrested another group of people in "Goat Canyon." *See United States v. Ramirez-Raudales*, 18mj-2071-RBB, Dkt. No. 1 (attached as Exhibit F). The probable case statement in that case claimed that, on April 27, 2018, a Border Patrol agent had observed "eighteen subjects walking northbound from the United States/Mexico International Boundary fence[.]" *Id.* According to the agent, "thirteen of the eighteen subjects . . . freely admitted to being citizens and nationals of Honduras." *Id.* The Border Patrol agent also claims that "[t]hree of the other subjects, admitted to being *citizens and nationals of India*, one admitted to being a citizen and national of Guatemala, and the remaining subject admitted to being a citizen and national of Mexico." *Id.* (emphasis added). According to the Border Patrol agent, "*[a]ll of the subjects* stated they were not in possession of immigration documents allowing them to enter or remain in the United States legally." *Id.* (emphasis added). The agent then "placed *all of the subjects* . . . under arrest." *Id.* (emphasis added).

---

[11] This portion of the statement of facts is based solely upon government-produced discovery. Ms. Mendoza-Romaldo does not adopt this statement as her own, and reserves the right to take contrary positions at trial.

**D.     The Attorney General announces the prosecution of only some of the arrestees.**

On May 1, 2018, the Office of the Attorney General issued a press release announcing that it had decided to prosecute only eleven of the eighteen people arrested at the border. *See* DOJ Press Release, "Justice Department Announces First Criminal Illegal Entry Prosecutions of Suspected Caravan Members," May 1, 2018 (Exhibit G). In the release, the Attorney General claimed that all eleven were "suspected members of the so-called 'caravan.'" *Id.* The Attorney General himself was quoted as specifically commending the United States Attorney for the Southern District of California for his charging decisions: "[the United States Attorney] and his team should be commended for ***quickly filing illegal entry charges*** for individuals apprehended along the southwestern border. We will continue to work with our partners in each U.S. Attorney's Offices to aggressively pursue prosecutions of criminal illegal entry." *Id.* (emphasis added). In turn, the United States Attorney was quoted as describing a "commitment to the rule of law," and promising that "those seeking entry into the United States must pledge fidelity to the law, not break them [*sic*], or else face criminal prosecution." *Id.*

The Press Release also contained a hyperlink to a page featuring downloadable complaints for each of the arrestees it had claimed were "suspected members of the 'caravan.'" *See* Exhibit H. Each complaint had been filed on April 30, 2018. *See* Exhibit I-1 through I-10. Each complaint charged a misdemeanor violation of 8 U.S.C. § 1325(a). And each probable cause statement specified the country of origin it alleged the defendants had claimed. *Id.* For Ms. Mendoza-Romaldo, the probable cause statement claimed she was a citizen of El Salvador. *See* Exhibit D. The

government alleges that all the other caravan defendants were from countries in Central America or Mexico.[12]

### F. Procedural history.

Ms. Mendoza-Romaldo made her first appearance on April 30, 2018, along with all the other caravan defendants. *See* Dkt. No. 3. As part of its role as the Southern District's community defender, Federal Defenders of San Diego, Inc., represented every defendant at new arraignments. Attorneys from Federal Defenders therefore reviewed every criminal complaint filed during the week of April 30, 2018. Not one misdemeanor illegal entry complaint charging a person who claimed to be a citizen of India – or of any country other than Honduras, Guatemala, El Salvador, and Mexico – was filed during that week. *See* Declaraion of Norma Aguilar (Exhibit J).

Ms. Mendoza-Romaldo was arraigned on the complaint and appointed an attorney to represent her. This motion follows.

## III.

### SUMMARY OF ARGUMENT

The Court should dismiss the complaint against Ms. Mendoza-Romaldo because the government selected her for prosecution on the basis of its belief as to her national origin. The record in this case makes plain the following facts: that the

---

[12] *See United States v. Abarca*, 18mj-2075-RBB (El Salvador); *United States v. Antunez-Antunez*, 18mj-2082-RBB (Honduras); *United States v. George*, 18mj-2085-RBB (Honduras); *United States v. Gutierrez-Flores*, 18mj-2074-RBB (Honduras); *United States v. Herrera-Romero*, 18mj-2073-RBB (Honduras); *United States v. Irias-Ladines*, 18mj-2080-RBB (Honduras); *United States v. Lopez-Robles*, 18mj-2078-RBB (Mexico); *United States v. Mendoza-Romaldo*, 18mj-2070-RBB (El Salvador); *United States v. Oroman-Contreras*, 18mj-2061-RBB (Guatemala); *United States v. Vasquez-Lopez*, 18mj-2072-RBB (Guatemala).

President of the United States publicly described the migrant caravan, including people from El Salvador, as a threat to the United States; that the Attorney General targeted for prosecution people that the government believed were from Central American countries, including El Salvador; that Border Patrol agents arrested eighteen people on April 27, 2018, including three people it believed were citizens of India; and that *only people the government believed were from Central American countries* were prosecuted.

These facts easily pass the high hurdle the Supreme Court has established for selective prosecution claims. In order to make out such a claim, Ms. Mendoza-Romaldo must show that people who were not from Central America or Mexico were *not* prosecuted even though they were similarly situated to her. Here, the government itself admits that it targeted what it believed to be members of the caravan, that it arrested non-Central American migrants in the same group, and that it prosecuted *only* those people whom it believes are citizens of Central American countries. This kind of invidious discrimination in charging decisions violates the Fifth Amendment's guarantee of Due Process and equal protection, and the Court should dismiss the complaint as a sanction.

## IV.

### ARGUMENT

**A.   Selective prosecution: background law.**

The Due Process clause forbids the government from making charging decisions based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). To establish a violation of this principle, "[t]he claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.' " *Id.* at 465.

"To meet the first requirement, of discriminatory effect, [a defendant] must show that similarly-situated individuals of a different [national origin] were not prosecuted." *United States v. Arenas-Ortiz*, 339 F.3d 1066, 1068 (9th Cir. 2003) (quoting *Armstrong*, 517 U.S. at 465; *see also United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam). In *Arenas-Ortiz*, the defendant had claimed that the government had targeted only Hispanic males for prosecution for illegal re-entry under 8 U.S.C. § 1326. *Id.* at 1068. Therefore, the Ninth Circuit ruled, he was required to show that "non-Hispanic males were not prosecuted even though they: (1) were aliens, (2) had been removed or deported from the United States, and (3) had re-entered without the consent of the Attorney General." *Id.* (citing the elements of illegal re-entry).

**B.    Discriminatory effect: the government could have prosecuted similarly-situated people of a different national origin—but chose not to.**

In this case, Ms. Mendoza-Romaldo has been charged with misdemeanor illegal entry in violation of 8 U.S.C. § 1325. Under *Armstrong* and *Arena-Ortiz*, she must demonstrate that the government chose not to prosecute people who were *not* from Central American countries even though they (1) were aliens (2) who had attempted to enter the United States at a time and place other than as designated by immigration officials. *See* 8 U.S.C. § 1325.

She can easily make that showing here. The government claims that Ms. Mendoza-Romaldo was arrested on April 27, 2018, in Goat Canyon. *See* Complaint, <u>Exhibit D</u>. It also claims that eighteen other people were arrested in Goat Canyon on the same day, including three who "admitted to being citizens and nationals of India[.]" <u>Exhibit E</u>. According to the government, "all of the subjects" in the latter group claimed not to have permission to be legally in the United States. *Id.* The government arrested "all of the subjects" in the latter group. *Id.* However, *only* those

UNITED STATES V. MENDOZA-ROMALDO, 18MJ-2070-RBB – MS. MENDOZA-ROMALDO'S MOTION TO DISMISS THE COMPLAINT - 11

arrestees whom the government believes are citizens of Central American countries have been prosecuted. *See* Exhibit G.

In other words, the people whom the government claims were citizens of India were literally "similarly-situated" to Ms. Mendoza-Romaldo in that they were arrested at the same time she was, claimed to be aliens, and claimed to have no permission to enter the United States. The probable cause against the citizens of India was therefore exactly the same as the probable cause against Ms. Mendoza-Romaldo. However, as trumpeted by the Attorney General in his press release, only Ms. Mendoza-Romaldo and the individuals the government claims are from Central America have been prosecuted—the government has chosen not to prosecute the citizens of India.

The facts the government admitted in its own sworn statement of probable cause plainly demonstrate that the government's prosecution decisions have had a discriminatory effect, and Ms. Mendoza-Romaldo easily satisfies the first prong of the *Armstrong* test.

**C. Discriminatory purpose: the government selected Ms. Mendoza-Romaldo for criminal prosecution because it believes she is a citizen of El Salvador.**

To succeed on the second prong of a selective prosecution claim, Ms. Mendoza-Romaldo must show that the government acted with discriminatory purpose. *Armstrong*, 517 U.S. at 465. " '[D]iscriminatory purpose' . . . implies more than . . . intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte v. United States*, 470 U.S. 598, 610 (1985) (citation and internal quotation marks omitted).

That the government targeted Ms. Mendoza-Romaldo based on her purported national origin is also plain, given the overwhelming focus by the President and the

Attorney General on deterring and punishing people from Central America who formed a part of the caravan.

The Attorney General is the chief law enforcement officer of the United States in charge of setting charging policies nation-wide. He is appointed by the President. The United States Attorney is responsible for charging decisions in the Southern District of California. He is also appointed by the President.

Here, the President made clear his belief that the migrant caravan was dangerous and needed to be deterred and punished. His repeated claims on Twitter and in speeches that the caravan participants were from Honduras and were committing rapes gave notice that he intended to single out people from Central American countries for prosecution and punishment. The President described the people who needed to be stopped as a "big Caravan of People from Honduras."[13] In turn, the Attorney General described the need to deter and punish the "so-called 'migrant caravan,' . . . consist[ing] mostly of Honduran nationals." *See* Exhibit C. And by charging only the people alleged to be from Central America, the United States Attorney for this District earned kudos from the Attorney General specifically as to his charging practice: he was commended "for quickly filing illegal entry charges for individuals apprehended along the southwestern border." *See* Exhibit G.

These statements from the President of the United States and the nation's chief law enforcement officer—who is directly responsible for charging policies for violations of federal law—demonstrate that Ms. Mendoza-Romaldo and the other arrestees whom the government claims are from Central America were selected for prosecution based on their purported national origin. No reason for prosecuting the

---

[13] https://twitter.com/realDonaldTrump/status/981121409807155200

Central American arrestees, but not the Indian arrestees, is apparent except for the obvious one: that the President and the Attorney General had made clear their expectation that the migrants from Central America would be prosecuted, and that the United States Attorney's charging decisions were conforming to this expectation. The decision was certainly *not* based on the Attorney General's "zero-tolerance" memo of April 6, 2018 – that memo had ostensibly called for "all" violations of § 1325 to be prosecuted. *See* Exhibit B. Had the government been following that memo when it chose to prosecute Ms. Mendoza-Romaldo, it would have charged the citizens of India as well. It of course did no such thing, and the reason is plain: only the targeted Central American migrants of the caravan were selected for prosecution.

The decision to prosecute Ms. Mendoza-Romaldo and the other alleged Central American arrestees was therefore based on "an unjustifiable standard such as race, religion, or other arbitrary classification" in violation of the equal protection guarantees of the Fifth Amendment. *Armstrong*, 517 U.S. at 464.

**D.     The proper remedy is dismissal of the complaint with prejudice.**

This court should dismiss the complaint with prejudice. While it's true that the Supreme Court has "never determined whether dismissal of the indictment, or some other sanction, is the proper remedy if a court determines that a defendant has been the victim of prosecution on the basis of his race," *Armstrong*, 517 U.S. at 461 n. 2, the remedy of dismissal is proper is supported by *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) (finding dismissal an appropriate remedy for a selective enforcement claim).

Other courts have acknowledged that dismissal is a remedy for a selective prosecution claim. *See, e.g.*, *United States v. Mumphrey*, 193 F. Supp. 3d 1040, 1055 (N.D. Cal. 2016); *In re Aiken County*, 725 F.3d 255, 264 n. 7 (D.C. Cir. 2013) (stating that, "[i]f the Executive selectively prosecutes based on impermissible

considerations, the equal protection remedy is to dismiss the prosecution"); *United States v. Vazquez*, 145 F.3d 74, 82 n. 6 (2d Cir. 1998) (stating that "[s]elective prosecution claims usually come up in litigation as affirmative defenses to prosecution, and the remedy is generally dismissal of the suit that was selectively prosecuted"); *Feder v. Village of Shiloh*, No. 97–1101, 1997 U.S. App. LEXIS 19190, at *5 n. 3 (7th Cir. July 22, 1997) (acknowledging the *Armstrong* footnote but adding that the remedy of dismissal "seems to be implicit in other decisions of the Supreme Court, and this court implicitly has accepted that as the correct remedy").

In this case, the Court should follow the guidance of these decisions and dismiss the complaint with prejudice.

**E.    At the very least, the Court should order the government to produce discovery on its charging practices.**

The Supreme Court has held that the standard for discovery in a selective prosecution claim is "somewhat less" than the standard for showing the violation itself. *Armstrong*, 517 U.S. at 469. In order to obtain discovery on her selective prosecution claim, Ms. Mendoza-Romaldo must show "*some evidence* that similarly situated defendants of other [claimed national origins] could have been prosecuted, but were not." *Id.*

As discussed above, Ms. Mendoza-Romaldo has resoundingly met this standard: she has presented evidence that the government arrested three people it claimed were citizens of India on the same day, and in the same location, as Ms. Mendoza-Romaldo. Exhibit E. It also claims that those citizens of India admitted they were present in the country illegally. *Id.*  However, the government decided not to prosecute the alleged citizens of India, deciding instead to prosecute only the alleged citizens of Honduras, Guatemala, Mexico, and El Salvador.

If the Court does not dismiss the complaint based on this evidence, Ms. Mendoza-Romaldo requests that the Court order the government to disclose the following items in discovery:

- Any charging policies for illegal entry or illegal re-entry cases that apply to the Southern District of California;
- Any and all internal communications, memoranda, reports, emails, or other statements between law enforcement officers and any members of the United States Attorney's Office regarding the decision to prosecute Ms. Mendoza-Romaldo (and the other ten people the Attorney General has claimed were charged as part of the caravan);
- The names and current whereabouts of all eighteen people arrested by Border Patrol in this incident on April 27, 2018, including specifically the three arrestees who claimed to be citizens of India;
- Any and all reports by law enforcement officers documenting the encounter and arrest of Ms. Mendoza-Romaldo, the other ten people charged with illegal entry offenses whom the government claims were members of the caravan, and the seven people not charged – including the three people who claimed to be citizens of India;
- Any and all internal communications, memoranda, reports, emails, or other statements between law enforcement officers and any members of the United States Attorney's Office regarding the three arrestees who claimed to be citizens of India;
- Any and all internal communications, memoranda, reports, emails, or other statements *within* the United States Attorney's Office regarding either the decision to prosecute Ms. Mendoza-Romaldo (and the other arrestees) or the

UNITED STATES V. MENDOZA-ROMALDO, 18MJ-2070-RBB – MS. MENDOZA-ROMALDO'S MOTION TO DISMISS THE COMPLAINT - 16

decision *not* to prosecute the three arrestees who claimed to be citizens of India.

## V.
## Conclusion

The government cannot choose whom to prosecute based on alleged national origin. But that's exactly what happened here: the government arrested a group of people who were in the precise same situation, and selected only those whom it believed to be from Central America to prosecute while releasing the rest. This kind of arbitrary, selective enforcement cuts at the heart of the meaning of "equal protection of the laws" and the fundamental protections of the Fifth Amendment's due process clause.

Our Constitution does not countenance such invidious discrimination in charging decisions, and the Court should dismiss the complaint with prejudice.

Respectfully submitted,

Dated: May 2, 2018                    */s/ Eric S. Fish*
                                      **Eric S. Fish**
                                      Federal Defenders of San Diego, Inc.
                                      Attorneys for Ms. Mendoza-Romaldo